IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
NO. 7:13-CV-39-FL

| | |
|---|---|
| KYLENA ROBERTS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| ONSLOW COUNTY BOARD OF ) | |
| EDUCATION, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure [DE # 18]. Plaintiff has filed a response in opposition to Defendant's motion, Defendant has replied, and the time for further filings has expired. Where this matter has been referred to the undersigned and the parties have not consented to the jurisdiction of the magistrate judge, Defendant's motion is undertaken pursuant to 28 U.S.C. § 636(b)(1)(B) for memorandum and recommendation. For the reasons stated below, it is recommended that Defendant's motion be granted.

## BACKGROUND

Plaintiff brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). Plaintiff alleges that she was discriminated against in her employment based on disability and age and that she was retaliated against for engaging in protected activity. (Compl. [DE #1] at 1-3.)

Plaintiff is fifty-seven years old and has been employed by the Onslow County School System for approximately twenty years. She is currently employed by Defendant as a public school teacher at White Oak High School. (Pl.'s Dep. [DE #21-1] at 17.) During the time relevant to this litigation, Plaintiff taught family consumer sciences at Dixon High School. (Pl.'s Dep. at 17.)

Plaintiff asserts that Defendant began discriminating against her in or around May 2011, after Plaintiff completed a form indicating that she would not be retiring and intended to return to teach the following year. In May 2011, Plaintiff advised her Principal, John Shannon, that she was having surgery and asked if she could take leave the last week of the school year. Plaintiff had initially scheduled an elective, facelift surgery[1] for June 16, 2011, after the last day of school. However, Plaintiff's surgeon had to reschedule, and Plaintiff selected June 9, 2011, because the only other times available were later in the summer and in October. Plaintiff testified that she did not want to reschedule for October because she would miss instructional time in the classroom (Pl.'s Dep. at 36) and did not want to have the surgery later in the summer because she was scheduled to go to her parents' home in West Virginia to help care for them (Pl.'s Dep. at 37).

Principal Shannon gave Plaintiff informal approval, but later requested that she provide him documentation from her surgeon regarding the surgery. (Pl.'s Dep. at 34, 36.) Plaintiff obtained the documentation from her surgeon but never gave it

---

[1] There is no question that Plaintiff's surgery was not medically necessary, Plaintiff having testified that it was purely cosmetic. (Pl's Dep. at 31.)

to Shannon.[2] Instead, she gave him her doctor's telephone number (without a name or physician practice) and told Shannon that he could call her doctor. Though she admitted she was not aware of Shannon having ever disclosed confidential medical information, Plaintiff testified that she did not provide Shannon with the doctor's note because she was afraid he would share the information with others in the school. (Pl.'s Dep. 40-41.) On June 2, 2011, Shannon asked Plaintiff to provide him with the names of her doctor and his office practice. Plaintiff responded by email, "It's Dr. White at Wilmington Health Associates." (Pl.'s Dep. at 45.) In fact, her surgeon was Dr. Kenneth White of Wilmington Plastic Surgery. (Pl.'s Dep. at 45-46.) Shannon later spoke with Dr. White, and Dr. White told Plaintiff of his conversation with Shannon. Dr. White indicated that he was going to send a fax to Shannon about the surgery, but Plaintiff instructed him not to do so. (Pl.'s Dep. at 48-49.) Following Plaintiff's June 2, 2011, email advising Shannon of her doctor's name, Plaintiff had no further communication with Shannon about her leave request. (Pl.'s Dep. at 50.) Plaintiff failed to appear for the final week of school and the subsequent teacher workdays and was not paid for that period of time.

During the dates of her requested leave, Plaintiff was responsible for administering state exams and entering her grades so that report cards could be sent out over the summer. (Pl.'s Dep. at 50, 53.) Plaintiff made arrangements for a testing coordinator to administer her two end-of-year exams and got two colleagues

---

[2] Plaintiff did not want Shannon to know what kind of surgery she was having (Pl.'s Dep. at 43) and did not tell Shannon that the surgery was an elective procedure (Pl.'s Dep. at 34).

to enter her final grades. (Pl.'s Dep. at 50-53.) However, her colleagues did not enter the grades properly. (Pl.'s Dep. at 54.) Shannon emailed Plaintiff informing her that her grades were incomplete as of June 15, 2011, but Plaintiff did not check her email though she had access to her email at home. (Pl.'s Dep. at 53-55.)

Plaintiff returned to school in August 2011. Plaintiff complains that she was given a smaller classroom, given a senior seminar in which she was to oversee senior projects, and given a different planning period. (Pl.'s Dep. at 63-73.) Plaintiff was also assigned to teach "Teen Living," a class she had not taught in ten years. (Pl.'s Dep. at 69-71.) Her objection to teaching the class stemmed from the fact that the class is comprised of freshmen, and Plaintiff did not want to teach freshmen. (Pl.'s Dep. at 71.) Plaintiff additionally maintains she did not have the training required to run the senior seminar. (Pl.'s Dep. at 77.)

Plaintiff also complains that she was denied sick leave between September and October of 2011. (Compl. at 2.) On September 20, 2011, Plaintiff applied for and received short-term disability due to stress and anxiety, which caused her to be out the rest of the 2011-2012 school year. (Pl.'s Dep. 79, 81, 84.) Although leave was ultimately approved, Plaintiff contends that she was paid late. (Pl.'s Dep. at 81-83.)

Plaintiff filed her formal EEO complaint on January 4, 2011. A right-to-sue letter was issued November 30, 2012, and Plaintiff avers that she received the letter on December 7, 2012. (Pl.'s Aff. [DE #22-1] at 1.)

4

## DISCUSSION

I.  Standard of Review

Summary judgement is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, *Anderson*, 477 U.S. at 248, but "must come forward with 'specific facts showing that there is a genuine issue for trial,'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Summary judgment is not a vehicle for the court to resolve disputed factual issues. *Faircloth v. United States*, 837 F. Supp. 123, 125 (E.D.N.C. 1993). Instead, a trial court reviewing a claim at the summary judgment stage should determine whether a genuine issue exists for trial. *Anderson*, 477 U.S. at 249.

In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. *Id.* at 247-

48. Accordingly, the court must examine "both the *materiality* and the *genuineness* of the alleged fact issues" in ruling on this motion. *Faircloth*, 837 F. Supp. at 125.

II. Timeliness

    a.    EEOC Charge

Under Title VII and the ADEA, a plaintiff is required to file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 180 days of each discrete, adverse employment action described in the complaint. *See* 42 U.S.C. § 2000e-5(e)(1); *see e.g., Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-15 (2002); *Williams v. Giant Food Inc.*, 370 F.3d 423, 428 (4th Cir. 2004); *Bratcher v. Pharm. Prod. Dev., Inc.*, 545 F. Supp. 2d 533, 539-43 (E.D.N.C. 2008).

Plaintiff filed her EEOC charge on January 5, 2012; thus, she cannot prevail on any claim under Title VII based upon misconduct alleged to have occurred before July 9, 2011. Plaintiff was denied pay for taking unauthorized leave for June 9 through June 17. Because this occurred prior to July 9, 2011, Plaintiff's claims arising out of her leave from June 9 to June 17, 2011 should be dismissed as untimely.

    b.    Civil Suit

A plaintiff seeking to sue under Title VII must file suit within ninety days after receipt of a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1). If the claim is not filed within the requisite ninety days, the plaintiff forfeits the right to sue. *See Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149-52 (1984). In

determining whether a suit is timely, the Fourth Circuit has rejected the "actual receipt rule" in favor of a more flexible case-by-case examination that allows for equitable tolling. *Harvey v. City of New Bern Police Dep't*, 813 F.2d 652, 653-54 (4th Cir. 1987). Under this approach, a claim may be equitably tolled where the plaintiff can "'present (1) extraordinary circumstances, (2) beyond [her] control or external to [her] own conduct, (3) that prevented [her] from filing on time." *Coleman v. Talbot Cnty. Det. Ctr.*, 242 Fed. App'x 72, 74 (4th Cir. 2007) (alterations in original) (quoting *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004)). Absent a showing that equitable tolling is appropriate, the ninety-day limitations period is strictly enforced. *See Harvey*, 813 F.2d at 654 (finding that an action filed ninety-one days after plaintiff's wife received the mail was untimely); *Severino-Todd v. Wal-Mart, Inc.*, No. 5:11-CV-336-BR, 2011 WL 6370483, at *4 n.6 (E.D.N.C. Dec. 20, 2011).

Plaintiff has presented evidence tending to establish that she received her right-to-sue letter on December 7, 2012. (Pl.'s Aff. at 1.) Defendant does not dispute this. For the purposes of summary judgment, "[t]he evidence of the non-movant is to be believed." *Anderson*, 477 U.S. at 255. Defendant purports that "[a] right to sue letter is presumed to have been received by the plaintiff three days after it was issued and mailed, pursuant to Fed. R. Civ. P. 6(d)." (Df.'s Mem. Supp. Mot. Summ. J. [DE # 21] at 7.) However, Rule 6(d) only applies in circumstances in which the date of receipt is in dispute. *See Ish v. Arlington Cnty. Va.*, 918 F.2d 955, 1990 WL 180127, at *1 (4th Cir. 1990) ("[I]f the date of receipt is unknown or in

7

dispute, courts presume receipt three days after mailing."). Here, Defendant has not put forth evidence to dispute Plaintiff's claim that the letter was received on December 7, 2012, and thus, the date of receipt is not in dispute. Therefore, for purposes of summary judgment, it is assumed that Plaintiff received her right-to-sue letter on December 7, 2012, and filed her suit within ninety days, on March 5, 2012.

III. **Title VII Claim**

In her complaint, Plaintiff asserts that Defendant discriminated against her based on age and disability and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* (Compl. at 1-2.) Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Because Plaintiff is not complaining of discrimination on the basis of "race, color, religion, sex, or national origin," she has failed to state a claim cognizable under Title VII and summary judgment in favor of Defendant is, therefore, appropriate on Plaintiff's Title VII claim.

IV. **Age Discrimination Claim**

While Plaintiff alleges "she has been discriminated against based on disability, age, and retaliation," she does not bring a claim under the Age Discrimination in Employment Act ("ADEA"), but instead relies on Title VII. An

8

age discrimination claim is not cognizable under Title VII. *Zombro v. Balt. Police Dep't*, 868 F.3d 1364, 1369 (4th Cir. 1989) ("The conclusion is irresistible that the ADEA provides the exclusive remedy for claims of age discrimination."). However, even assuming that Plaintiff had properly brought her claim under the ADEA, this claim would nevertheless fail.

The ADEA forbids "an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "Under the ADEA, the plaintiff 'must prove, by a preponderance of the evidence, that age was the 'but for' cause of the challenged adverse employment action.'" *Duffy v. Belk, Inc.*, 477 Fed. App'x 91, 93 (4th Cir. 2012) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 168 (2009)). "Generally speaking, a plaintiff may avert summary judgment and establish a claim for . . . age discrimination through two avenues of proof." *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 284 (4th Cir. 2004). First, a plaintiff may establish a claim of discrimination by demonstrating that discrimination was the motivating factor in the employment decision. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2523, 186 L.Ed.2d 503 (2013).[3]

"The second method of averting summary judgment is to proceed under a 'pretext' framework, under which the employee, after establishing a prima facie

---

[3] In *Nassar*, the Supreme Court reaffirmed that ADEA claims are analyzed differently than Title VII discrimination claims. Title VII only requires proof that discrimination was a motivating factor, whereas the ADEA requires "but for"

9

case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at 285; *see also Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 807 (1973). A prima facie case requires the plaintiff to prove facts from which a nexus can be inferred between the alleged adverse action and the plaintiff's protected status or conduct. *Holder v. City of Raleigh*, 867 F.2d 823, 826 (4th Cir. 1989).

In order to establish a prima facie case of age discrimination in the terms and conditions of employment under the framework established by *McDonnell Douglas*, a plaintiff must present evidence that (1) she is a member of the protected age group; (2) she suffered adverse employment action; (3) she was satisfactorily performing her job duties at the time of the adverse action; and (4) a similarly situated, substantially younger individual was treated more favorably. *See Apodaca v. Sec'y Dep't Homeland Sec.*, 161 Fed. App'x 897, 900 (11th Cir. 2006) (outlining requirements for prima facie case of disparate treatment). Once the plaintiff meets her initial burden, the burden then shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for the adverse employment action. *Hill*, 354 F.3d at 285. The employer's burden is one of production, not of persuasion. *See Henson*, 61 F.3d at 274-75. Thus, the employer is not required to prove the absence of discriminatory motive. *Id.* If the employer meets its burden,

---

causation.

the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were "a pretext for discrimination." *Burdine*, 450 U.S. at 253. Once each party has met his obligation, "[t]he ultimate question is whether the employer intentionally discriminated." *Reeves v. Sanderson, Plumbing Prods.*, Inc., 530 U.S. 133, 146 (2000). It is not enough that the fact finder finds the employer's explanation unpersuasive. *Id.* at 146-47. The fact finder must also believe the plaintiff's explanation. *Id.* at 147.

Here, Plaintiff offers no direct evidence to support a finding that age discrimination was the "but for" cause of why she was given a different classroom, required to teach a different course, and paid late after taking leave from the school. Thus, she must proceed under the *McDonnell Douglas* framework. There is no dispute in this case that Plaintiff meets the first prong. She was fifty-four to fifty-five years of age at the times relevant to this action and under the ADEA is a member of the protected class. As to the second prong, Plaintiff states she suffered adverse employment actions in the form of: (1) refused medical leave, (2) late wage payments, and (3) abrupt changes of her schedule and classes.

Assuming for purposes of Defendant's motion that these actions constitute "adverse employment actions" and that Plaintiff was performing her job duties at a level that met her employer's legitimate expectations, Plaintiff has nevertheless failed to come forward with any evidence to suggest that she was treated differently than other employees based upon her age as required by the fourth prong. Although Plaintiff argues that a younger teacher was allowed to take leave during

11

the last week of school, that claim fails for a number of reasons. First, as set forth above, Plaintiff did not file her EEOC charge of discrimination within 180 days of the alleged adverse employment action and the claim is therefore untimely. Second, Plaintiff's evidence fails to demonstrate sufficient similarity between Plaintiff and the younger teacher. In fact, Plaintiff's deposition testimony indicates only that a younger male teacher was granted leave because his wife had given birth. (Pl.'s Dep. at 61-62.) Third, the record is devoid of any evidence concerning this teacher's age and Plaintiff has, therefore, failed to demonstrate that he is "substantially younger" than Plaintiff. *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312 (1996) (prima facie case requires a plaintiff to show disparate treatment of a "substantially younger" individual).

Moreover, Defendant has articulated legitimate, non-discriminatory reasons for the allegedly adverse employment actions. Defendant has presented evidence tending to establish: (1) that Plaintiff did not provide documentation as requested for her leave in June 2011 (Pl.'s Dep. at 34-35, 40); (2) that the needs of the school had changed as to the number of students and required class sizes (Shannon's Aff. [DE #19] at 3-4); (3) that the senior seminar was a twenty-minute homeroom class that did not require special training (Pl.'s Dep. at 77; Childress' Aff. [DE #20] at 1-2); and (4) that the Vice Principal was required to replace Plaintiff when she took leave of more than ten days (Childress' Aff. at 2).

Plaintiff offers no evidence to suggest that Defendant's actions were pretextual. Rather, she merely makes the conclusory statement that "her refusal to

12

retire in June of 2010 caused . . . Principal John Shannon to treat her in a negative fashion." (Resp. at 6.)

In addition to having failed to plead a cognizable age discrimination claim, Plaintiff has failed to come forward with evidence sufficient to support a finding that the alleged employment actions taken against her were due to her age. Summary judgment for Defendant should, therefore, be granted on Plaintiff's age discrimination claim.

## V. Disability Discrimination Claim

As set forth above, Plaintiff has failed to state a cognizable claim of disability discrimination, as Title VII does not protect against discrimination on the basis of disability. Rather, such a claim is recognized under the Americans with Disabilities Act ("ADA"). The ADA prohibits discrimination against "a qualified individual with a disability because of the disability of such an individual." "[A] qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. §§ 1211(a), 1211(8). An individual is disabled if she (i) has a "physical or mental impairment that substantially limits one or more major life activities"; (ii) has a record of such an impairment; or (iii) is "regarded as having such an impairment." 42 U.S.C. § 12102(1).

Assuming, arguendo, that Plaintiff had properly asserted the ADA as the basis of her disability discrimination claim, it would nevertheless be subject to

13

summary judgment.  Although Plaintiff alleges in her complaint that she "was suffering from a disability and needed surgery" (Compl. at 2), she has presented no evidence to support a finding that she has a disability within the meaning of the ADA.  In her deposition, Plaintiff was asked by Defendant whether there "[w]as any medical necessity for the face-lift procedure or was it purely elective?" Plaintiff responded, "It was elective." (Pl.'s Dep. at 6.)  Plaintiff testified to the bruising caused by the facelift (Pl.'s Dep. at 56) but has offered no evidence suggesting that her condition, either before or after the procedure, made her disabled.

There is evidence in the record to support a finding that Plaintiff suffered from temporary disability due to anxiety.  However, the complaint alleges disability discrimination only with respect to Plaintiff's elective surgery, not the anxiety which subsequently led Plaintiff to take extended leave.  Thus, summary judgment on Plaintiff's disability discrimination claim is also warranted on this basis.

## VI. Retaliation

In her complaint, Plaintiff asserts that Defendant violated Title VII by retaliating against her for "complain[ing] to human resources regarding the adverse employment action taken by Defendant with respect to the terms, condition and/or privileges of her employment by later transferring Plaintiff to another high school without notice or opportunity to be heard." (Compl. ¶ 9.) As the protected activity of which Plaintiff complains concerns age and disability discrimination, this claim is not cognizable under Title VII, *see* 42 U.S.C. § 2000e-3(a) (anti-retaliation provision), but instead must be brought under the ADEA and ADA, both of which

14

have their own provisions prohibiting retaliation, *see* 29 U.S.C. § 623(d) (ADEA); 42 U.S.C. § 12203(a) (ADA). Plaintiff having failed to do so, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

Additionally, Plaintiff has failed to present any evidence to support her claim of retaliation. In her deposition, Plaintiff testified that the basis of her retaliation claim was that Principal Shannon took adverse action against her in retaliation for her failure to retire. When asked, "Is there anything else that you believe that he was retaliating against you for, other than failing to retire?" Plaintiff responded "No." (Pl.'s Dep. at 69.) Plaintiff has presented no evidence in response to Defendant's summary judgment motion to support a finding that she engaged in protected activity under the ADEA or the ADA or that her transfer to another school was in any way causally related to protected activity. Accordingly, Defendant is entitled to summary judgment on this claim.

## CONCLUSION

For the foregoing reasons, the undersigned RECOMMENDS that Defendant's motion for summary judgment [DE #18] be GRANTED.

The Clerk shall send a copy of this Memorandum and Recommendation to the respective parties, who shall have fourteen (14) days from the date of service to file written objections. Failure to file timely, written objections shall bar an aggrieved party from obtaining de novo review by the District Judge on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the

proposed factual findings and legal conclusions not objected to, and accepted by, the District Judge.

This 28th day of August 2014.

_____
KIMBERLY A. SWANK
United States Magistrate Judge